**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:

                                                                          **CASE NO.: 17-50846**

**RICKMAN C. PRICE**
**DANA L. PRICE**

                                                                            **CHAPTER 12**

**DEBTOR-IN-POSSESSION**

**DEBTORS' CHAPTER 12 PLAN OF REORGANIZATION DATED 7/13/17**

The Debtors, Rickman C. and Dana L. Price, husband and wife, by and through counsel, propose the following Plan to their creditors, pursuant to 11 U.S.C. § 1221;

**ARTICLE I**
**GENERAL OVERVIEW OF THE PLAN**

The Plan provides that the Debtors shall submit all of their Net Disposable Income, as defined herein, from their unencumbered farming operations, farming of tobacco, other crops, the raising of beef cattle, other miscellaneous farm income; any governmental farm payments, if any; and Debtors' employment, to the supervision and control of the Chapter 12 Trustee for a period of five (5) years, beginning on the date of filing. Net Disposable Income shall mean income from all of the sources listed above, after payment of all farming and living expenses as set forth herein. At this time the Debtors propose to submit the following Net Disposable Income to the Trustee for the payment of claims:

        1)        $55,169.00 for year one through five of the plan, the first of such payments to be made on or before 4/1/2017 and continuing on the 1st day of April each succeeding year until the end of the plan.

These sums set forth herein represent projected net disposable income of the Debtors for the duration of the plan, and as such will be committed to the use of the plan.

A summary of the Debtors' encumbered assets, the value thereof, and the secured liabilities is described herein.

## ARTICLE II
## TREATMENT OF ALLOWED ADMINISTRATIVE CLAIMS

The class of Allowed Administrative Claims, which shall be paid from the Debtors' operations and/or Net Disposable Income, as set forth herein.

All fees payable to the Chapter 12 Trustee shall be paid from the Debtors' Net Disposable Income as defined in Article I.

An Allowed Administrative Claim, as defined in 11 U.S.C. § 503(b), if any, shall be paid in full, without interest, through the payments stream committed by Debtors to the plan or when due in the ordinary course.

Professional Fees, including the fees to Debtor's Counsel, Matt Sanning, shall be paid by the Debtors as soon as practical, after notice and hearing, and upon approval of this Court. Allowed Professional Fees shall be satisfied first from the retainer paid by the Debtors prior to the filing of the Petition and that are held by their counsel if any, and then, if still not satisfied in full, shall be paid by the Chapter 12 Trustee from the Net Disposable Income in priority with provided for allowed administrative claims as set out in Article III. Post confirmation Professional Fees shall not require court approval but shall be disclosed in accordance with 11 U.S.C. § 329.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

11 U.S.C. § 1222 requires that a plan of reorganization classify the claims of Debtors' creditors.  Said provision also requires that a plan of reorganization provide for the same treatment of each class of claims, unless a claimant agrees to another treatment.  Each claim shall be paid in order of the numerical priority set out below.  The classifications of the Debtors' claims are as follows:

1.     Allowed Administrative claims as described in the proceeding paragraph, including Professional Fees and Chapter 12 Trustee's fees.

2.     The secured claims of Farm Credit Services of Mid-America (hereinafter "Farm Credit") which claims have not been filed in the above captioned matter, said claims are secured by valid first and second mortgage on the Debtors' farm and residence.  The value of the Debtors' real estate, as described in Schedule A filed by the Debtors in the above captioned matter (hereinafter "the Real Estate"), shall be established at One Hundred Ninety-Five thousand dollars. ($195,000.00).

The secured claims of Farm Credit are also secured by all crops owned by the Debtors at the time of the filing of the petition, said crops consisting of 100 bales of hay.  The value of this 100 bales of hay is established at $2,600.00.  Additionally, the secured claim of Farm Credit is secured by a 2004 Ford F-550 and an L75 Bobcat.  The combined value of these two pieces of equipments shall be established at $9,000.00.

The claims of Farm Credit are also secured by a first lien on the proceeds of Debtors' claim for crop insurance proceeds due from ARM Co.  The value of said collateral is unknown,

however Debtors hereby surrenders any interest it may have in said collateral to Farm Credit Services, and upon confirmation of the plan all rights to receive any funds from ARMCo shall vest in Farm Credit. Debtor will reasonably cooperate with any efforts which Farm Credit elects to take to collect upon said claims.

The claims of Farm Credit shall be treated as partially secured in the sum of $206,600.00. The remaining balance of the claims of Farm Credit shall be treated as an unsecured claim under paragraph 13 of Article III of this plan.

The aforementioned claims of Farm Credit, shall be paid in over a period of 30 years, with 4.25% interest. The payments shall be made by the Trustee from funds committed to the plan, during the life of the plan, and after the conclusion of the plan, directly by the Debtors to Farm Credit. The payment shall be made annually with the first such payment commencing on or before 4/1/18 and shall continue on that date each year thereafter until paid in full. The amount of the annual payments shall be $12,313.00.

3. The claim of The Huntington National Bank (hereinafter "Huntington") , said claim being denominated claim number 2-1 in the claims register of the instance action is secured by 2011 Dodge Ram Pickup Truck Vin#2334. The allowed secured value of the aforesaid claim 2-1 shall $2,933.86 and the value of the aforesaid equipment for claim 2-1 shall be established at $27,500.00, and the claims of Farm Credit shall be paid in over a period of 2 years by annual payments, with 4.25% interest. The lien of Huntington on the aforementioned collateral shall be established as a first lien on said collateral. The annual payments shall be made by the Trustee from funds committed to his control, and shall be in the annual of amount of $1560.83. The claim shall be satisfied from the first two annual payments made by the Debtors

to the Trustee. The claim is Huntington shall be fully secured, an upon the payment of such claim by the Trustee, Huntington shall release its lien on the 2011 Dodge Ram Pickup Truck Vin#2334.

4. The claim of Capital One Auto Finance (hereinafter "Capital One"), said claim being denominated claim number 1-1 in the claims register of the instance action, is secured by a title lien on a 2016 Lincoln Navigator with Vin #xxxxxL01108 (hereinafter "the Vehicle") owned by Dana Price. Said title lien was recorded preferentially in violation of the provisions of 11 USC 547. The value of the Vehicle shall be established at $22,000.00. The allowed secured value of claim of Capital One shall be established at $00.00 and said claim shall be treated as an unsecured claim under the provisions of paragraph 13 of Article III of this plan. In the event that the Debtors receive a discharge in this matter then the title lien of Capital One shall no longer attach to the Vehicle of Dana Price. Capital One shall have 30 days from the entry of the discharge in this matter to release its lien on the Vehicle. In the event that it fails to do so, Debtors may move the Court for an order directing the Nicholas County Clerk to release said lien.

5. The claim of Central Kentucky Agricultural Credit Association (hereinafter "CKAC") , said claim being denominated claim number 3-1 in the claims register of the instance action is secured by 2004 New Holland TL100A Tractor Serial Number# HJS105464. The allowed secured value of the aforesaid claim 3-1 shall be $15,500.00 and the value of the aforesaid collateral for claim 2-1 shall be established at $15,500.00. The remaining portion of the claim of CKAC shall be treated as an unsecured claim and treated under the provisions of Article III, numerical paragraph 13 of this plan. The claims of CKAC shall be paid in over a

period of 10 years by annual payments, with 4.25% interest.  The lien of CKAC on the aforementioned collateral shall be established as a first lien on said collateral.  The annual payments shall be made by the Trustee from funds committed to his control during the life of the plan and continuing after the conclusion of the plan directly to CKAC by the Debtors with the first such payment due on April 1st 2018 and continuing thereafter annually until paid in full. The annual payment shall be in the amount of $1934.64.

      6.      The claim of AGCO Finance, LLC (hereinafter "AGCO") , said claim being denominated claim number 4-1 in the claims register of the instance action is  secured by Service-Rhino, 4150 Batwing Mower, 30014.  The allowed secured value of the aforesaid claim 4-1 shall be $6,500.00 and the value of the aforesaid collateral for claim 4-1 shall be established at $6,500.00.  The remaining portion of the claim of AGCO shall be treated as an unsecured claim and treated under the provisions of Article III, numerical paragraph 13 of this plan.  The claims of AGCO shall be paid in over a period of 10 years by annual payments, with 4.25% interest.  The lien of AGCO on the aforementioned collateral shall be established as a first lien on said collateral.  The annual payments shall be made by the Trustee from funds committed to his control during the life of the plan and continuing after the conclusion of the plan directly to AGCO by the Debtors with the first such payment due on April 1st 2018 and continuing thereafter annually until paid in full. The annual payments shall be in the amount of $811.40.

      7.      The claim of The Citizens Bank (hereinafter "Citizens"), said claim being denominated claim number 6-1 in the claims register of the instance action is secured by all cattle of the Debtors, which collateral consists of 1/2 interest in 24 beef cows, 13 Heifers, 2 bulls, 6 calves ready to sell, 10 baby calves, and a 100% interest in 7 beef cows and 1 bull "hereinafter

"the Cattle")  The allowed secured value of the aforesaid claim 6-1 shall be $29,100.00 and the value of the aforesaid collateral for claim 6-1 shall be established at $29,100.00.  The remaining portion of the claim of Citizens shall be treated as an unsecured claim and treated under the provisions of Article III, numerical paragraph 13 of this plan.  The claims of Citizens shall be paid in over a period of 10 years by annual payments, with 4.25% interest.  The lien of Citizens on the aforementioned collateral shall be established as a first lien on said collateral.  The annual payments shall be made by the Trustee from funds committed to his control during the life of the plan and continuing after the conclusion of the plan directly to Citizens by the Debtors with the first such payment due on April 1st 2018 and continuing thereafter annually until paid in full. The annual payments shall be in the amount of $3,632.56.

      Debtors may at their election, sell any or all of the cattle, for fair market value.  The proceeds of such sales shall be remitted to the Chapter 12 Trustee, with such proceeds to be distributed to Citizens by the Trustee and credited against Citizens allowed secured claim.  After the conclusion of the plan, should Citizens allowed secured claim not having previously been satisfied, then the proceeds of any sale of the Cattle shall be remitted to Citizens directly by the Debtors.

      8.      The claim of CNH Industrial Capital America, LLC (hereinafter "CNH"), said claim being denominated claim number 9-1 in the claims register of the instance action is secured by a TR7 New Holland Combine SN# 55780, and a 974 New Holland Combine Header SN#483499.  The allowed secured value of the aforesaid claim 9-1 shall be $12,061.58 and the value of the aforesaid collateral for claim 9-1 shall be established at $27,500.00.  Claim No. 9-1 of CNH shall be paid in over a period of 10 years by annual payments, with 4.25% interest.  The

lien of CNH on the aforementioned collateral shall be established as a first lien on said collateral. The annual payments shall be made by the Trustee from funds committed to his control during the life of the plan and continuing after the conclusion of the plan directly to CNH by the Debtors with the first such payment due on April 1st 2018 and continuing thereafter annually until paid in full. The annual payments shall be in the amount of $1,505.96.

9. The claim of CNH Industrial Capital America, LLC (hereinafter "CNH"), said claim being denominated claim number 10-1 in the claims register of the instance action is secured by a T5050 New Holland Tractor SN#ZBJH21996. The allowed secured value of the aforesaid claim 10-1 shall be $7,554.49 and the value of the aforesaid collateral for claim 10-1 shall be established at $9,500.00. Claim No. 10-1 of CNH shall be paid in over a period of 10 years by annual payments, with 4.25% interest. The lien of CNH on the aforementioned collateral shall be established as a first lien on said collateral. The annual payments shall be made by the Trustee from funds committed to his control during the life of the plan and continuing after the conclusion of the plan directly to CNH by the Debtors with the first such payment due on April 1st 2018 and continuing thereafter annually until paid in full. The annual payments shall be in the annual of amount of $943.03.

10. The claim of CNH Industrial Capital America, LLC (hereinafter "CNH"), said claim being denominated claim number 11-1 in the claims register of the instance action is secured by a T6030 New Holland Tractor SN#ZCDB16057. The allowed secured value of the aforesaid claim 11-1 shall be $14,343.02 and the value of the aforesaid collateral for claim 11-1 shall be established at $25,500.00. Claim No. 11-1 of CNH shall be paid in over a period of 10 years by annual payments, with 4.25% interest. The lien of CNH on the aforementioned

collateral shall be established as a first lien on said collateral. The annual payments shall be made by the Trustee from funds committed to his control during the life of the plan and continuing after the conclusion of the plan directly to CNH by the Debtors with the first such payment due on April 1st 2018 and continuing thereafter annually until paid in full. The annual payment shall be in the of amount of $1,790.44.

11.     The claim of CNH Industrial Capital America, LLC (hereinafter "CNH"), said claim being denominated claim number 12-1 in the claims register of the instance action is secured by a TB110 New Holland Tractor SN#B72013M. The allowed secured value of the aforesaid claim 12-1 shall be $9,669.65 and the value of the aforesaid collateral for claim 12-1 shall be established at $12,500.00. Claim No. 12-1 of CNH shall be paid in over a period of 10 years by annual payments, with 4.25% interest. The lien of CNH on the aforementioned collateral shall be established as a first lien on said collateral. The annual payments shall be made by the Trustee from funds committed to his control during the life of the plan and continuing after the conclusion of the plan directly to CNH by the Debtors with the first such payment due on April 1st 2018 and continuing thereafter annually until paid in full. The annual payments shall be in amount of $1,207.06.

12.     This class consists of any pre-petition priority claims entitled to priority. Said priority shall be defined under 11 U.S.C. § 507. Should any such claims exist, said claims shall be paid by the Chapter 12 Trustee from the Debtors' Net Disposable Income. Said claims shall be paid before any other unsecured claims shall be paid, save those claims described in the previous Article.

13. Allowed Unsecured Claims. This class shall consist of all allowed unsecured claims, which shall be paid by the Chapter 12 Trustee, pro rata, from Net Disposable Income, if any, on or before the anniversary of the effective date of the Debtors' Chapter 12 Plan of Reorganization.

14. All Other Secured Claims. An allowed secured claim not specifically provided for in the Plan shall be classified in a junior class of secured claims that will be paid through the Plan on a pro rata basis with all other allowed secured claims in the class. Each allowed claim in the class will be paid to the extent of the value of the collateral set forth in the Creditor's proof of claim or the amount of the allowed claim, whichever is less, with interest at the rate of 4%. Allowed administrative expenses shall be paid in full prior to distribution to this class of secured claims.

## ARTICLE IV

The Debtors hereby submit their Net Disposable Income, as defined above, to the supervision and control of the Chapter 12 Trustee for a period of five (5) years. The Debtors' Unencumbered Funds shall be derived from the unencumbered proceeds from the Debtors' current and future farming operations, miscellaneous farm income, and employment.

From those proceeds they anticipate making the annual payments setout above. The remaining portion of the funds they will maintain for personal household use and for the production expenses associated with the 2017 crop year and succeeding crop years.

Presently both Debtors are employed. Debtor is employed by an LLC which Debtors wholly own. Debtor's monthly take home income from such employment is estimated to be $2,850.00 per month. Joint Debtor is also employed and expects to net $1950.00 per month from

such employment. Additionally, Debtor utilizes his tractors as part of his employment, and the LLC reimburses him the amount of $966.66 per month.

Debtors are raising 30 acres of soybeans. The crop the is expected to cost $5950.00 to raise, house, and market. The gross proceeds from the corn crop are expected to be $15,750.00 with a net annual income of $9,800.00.

Debtors are also raising 30 acres of tobacco. The crop is expected to cost $53,075.00 to raise, house, and market. The gross income from the tobacco crop is expected to be $112,750.00, for a net annual income of $52,962.25.

Debtors are also raising calves. The calves are expected to generate net income of $6,000.00 annually.

The Debtors possesses personal property as is setout in their Schedule B, which is hereby incorporated by reference to this plan, as if fully setout herein. The Debtors have farm equipment as described in their bankruptcy schedules, which is used in the production of their crops, the raising of cattle, and other farming operations. The combined unencumbered value of their personal property, including the equity which exists in the property that they own which is collateral for various loans treated in Article three of this plan is $169,884.63. When exemptions and hypothetical costs of sale are applied to this number, it yields a liquidation number of $119,189.63.

Debtors have proposed a plan which provides for the submission of $55,169.00 per year for five years to the funding of the plan. From that number, $28,457.37 will be committed to paying secured creditors and Trustee's commission. This leaves the sum of $26,711.63 per year of the plan to be committed to the payment of unsecured claims, for a total payout of

$133,558.37 to unsecured creditors, less allowance of administrative expenses for Debtors' attorney's fees. Thus so long at Debtors' attorney's fees do not exceed $14,000.00, then liquidation is met by the terms of this plan. Requests for Debtors' counsels attorney's fees will not exceed $14,000.00.

Debtors propose to retain the balance of the proceeds received by production of the 2017 crop and succeeding years, as well as the net monthly income after payment of the monthly plan payment contained in Article One of this plan, for personal expenses, operational expenses associated with raising crops, and retainage for the purpose of purchasing and maintaining equipment and cattle. The other expenses of the Debtors are set forth in their Schedule J, which is hereby incorporated by reference to this plan, as if fully setout herein.

## ARTICLE V
## ASSUMPTION OF LEASES

The Debtors have no leases which they must assume or reject.

## ARTICLE VI
## MODIFICATION OF PLAN AFTER CONFIRMATION

The Debtors may request the Court to modify this Plan before or after confirmation in accordance with 11 U.S.C. § 1222 or § 1229. A modification of the plan pursuant to §1229 may be granted by the Court upon showing by Debtors that a material change in circumstances has occurred, such a change in circumstances would include, but are not limited to, a reduction or increase in Debtors' income whether temporary or permanent.

## ARTICLE VII
## AUTOMATIC STAY

Notwithstanding the entry of an Order confirming the Plan, the automatic stay provided by 11 U.S.C. § 362 shall continued in effect as to all property retained by the Debtors until the Plan has been completed, terminated or a discharge entered, or an order entered by the Court lifting the automatic stay, whichever is earlier. The automatic stay does not apply to any property given as collateral for post-confirmation operating loans, which may be approved by the Court.

## ARTICLE VIII

Except as provided in the Plan, the Order confirming the Plan vests all property of the Estate in the Debtors free and clear of all liens and encumbrances.

The Court shall retain jurisdiction of the Debtors and their property for the term of the Plan.

The secured debt of any secured creditor may be further modified by agreement between the Debtors and said creditor, without Court approval, or upon application of the Debtors and approval by the Court for cause after notice to the subject secured creditor and a hearing conducted by the Court.

## ARTICLE IX
## DISCHARGE

Upon the Debtors' compliance with the provision of the Plan for the term of the Plan, the Court shall enter a discharge which shall discharge the Debtors from all claims provided for in the Plan, except as those provided under 11 U.S.C. § 1222(b)(5) and 11 U.S.C. § 523(a).

## ARTICLE X

In the event that any secured creditor provided for by Article III of this plan obtains relief from the automatic stay, then no further distributions shall be made to such creditor by the Trustee until an amended claim for the deficiency balance is filed and allowed.  Such creditor shall have 90 days from the entry of the order for relief from the automatic stay to file such an amended claim, in the event that they do not do so then the claim will thereafter be disallowed.  Such creditor shall thereafter be treated as general unsecured creditor under the provisions of Article III, paragraph 13, and any unpaid deficiency balance will be subject to the discharge entered in this matter.

## ARTICLE XI

The value of all Debtors personal property not otherwise valued under another Article of this plan shall be established at the value provided for such personal property in the schedules filed by the Debtors in the records of this above captioned proceeding.

## ARTICLE XII

Debtors shall retain the right to object to any proof of claim after confirmation

## ARTICLE XIII

Except as otherwise expressly set forth herein, all creditors whose claims are treated as secured in this Plan shall retain their liens on the collateral securing their respective claims until such claims are paid in full as provided by this Plan.  Except as modified by the terms of this Plan, all documents evidencing indebtedness and security in favor of said creditor remain the same and are incorporated herein by reference as if more fully set forth in this Plan.  The entry of

the discharge in this matter shall operate as a release of all security interests and liens on the property of the Debtor, other than secured creditors treated under Article III, paragraphs 2, 5, 6, 7, 8, 9, 10 and 11.

Dated: 7/13/17

Respectfully submitted,

/s/ Rickman C. Price_____
RICKMAN C. PRICE


/s/ Dana L. Price_____
DANA L. PRICE



/s/Matt Sanning
Matt Sanning
224 Main Street
Augusta, KY  41002
(606) 756-2066
Facsimile:  (606) 756-2207
mattsanning@windstream.net
*Attorney for Debtors*